The Honorable Judge of the United States Court of Appeals for the Day of Service. Hear ye, hear ye, hear ye. United States Court of Appeals for the Day of Service is now in session. All court representatives report to the Honorable Court. They will be brought here and they will be heard. God save the United States and the Honorable Court. We have one case for, or a pair of cases for remote argument. Tamiya Banks vs Cotter Corporation. We're all scattered but the remote is helping us get this done. I guess we're going from 8th Circuit to the 9th Circuit locationally. Ms. Steeve, you have the floor. Thank you, Your Honor. Good afternoon and may it please the Court. Jennifer Steeve on behalf of Appellant and Petitioner, Cotter Corporation. Your Honor, may I confirm that I have 5 minutes reserved for rebuttal? That's up to you, Counsel. Thank you. The jurisdictional provision of the Price-Anderson Act is intentionally broad. That is what the Supreme Court has held and every circuit to have addressed the issue has agreed. We urge this Court to follow suit. I have three main points today. One, the only jurisdictional requirement of the Act has been met here. That is that the claims arise from a nuclear incident. And two, the unambiguous plain text should resolve this case. But even if needed, the legislative history supports a plain text reading at every turn. And three, this Court has appellate jurisdiction to review the entirety of the remand order below. And we encourage this Court to use that authority to reverse. I want to start with the Price-Anderson Act's structural distinction between the substantive provisions such as licensing and indemnification and the separate indemnification provision, which is at the heart of this case. That provision provides for removal and confers original jurisdiction over, quote, any public liability action arising out of or resulting from a nuclear incident, end quote. Here, because plaintiffs allege property damage or bodily injury arising from the radioactive properties of source or byproduct material, that is a nuclear incident by definition. And the District Court erred in declining to exercise that original jurisdiction. And before 1988, the jurisdiction provision of the Act only extended to an extraordinary nuclear incident. But after the Three Mile Island incident, a patchwork of lawsuits arose in state and federal court, as we're seeing now. And the Department of Energy did not designate it an extraordinary nuclear occurrence. So the courts rightly found they did not have federal jurisdiction. Congress sought to address that exact problem in the 1988 amendments and explicitly expanded federal jurisdiction to all nuclear incidents, not just extraordinary nuclear occurrences. The driving policy reason was threefold. It wanted to get a single nuclear incident into federal court and have all claims decided there together. One, because it avoided the inefficiencies resulting from the patchwork of litigation across jurisdictions. Two, it avoided inconsistent outcomes. And three, it ensured prompt, equitable compensation for victims of any nuclear incident. So when plaintiffs rely on Silkwood or other circuit authority or legislative history that predates the 1988 amendments, that fails to account for the fact the 1988 amendments were transformative. In fact, in its 1998 report to Congress, the Nuclear Regulatory Commission, one of the agencies tasked with administering this statute, the NRC, the NRC said that the act has omnibus coverage. It channels liability to nuclear operators and ultimately to the government. And it said this, As a result of the plain text and equally unambiguous legislative history, the Supreme Court has said the act converts state law claims arising from a nuclear incident into federal claims. It confers original jurisdiction and it provides for removal as of right. And all federal circuits to have addressed this question have agreed. The bottom line is that if the act applies, you cannot plead around it. You cannot avoid it. The district has original jurisdiction and the case can be removed. The district court here erred as a matter of law when it concluded that the act does not apply without a government license or indemnity applicable to the activity at issue. That requirement isn't found anywhere in the text of the jurisdictional provision or in the legislative history of the act. And our sister circuits have soundly rejected that. We urge this court to follow those holdings. Well, counsel, you said that twice now. I've got to ask you, are there just the two, the fifth and the third? The fifth and the third are most directly on point. And the 10th Circuit has a similar holding as the breadth of the jurisdictional provision post 1988. So it seems that this court is highly familiar with the third and the fifth circuit provisions. So I'll briefly sum up. The third circuit said they were unpersuaded that an indemnification agreement is necessary to trigger the application. And the Fifth Circuit rejected a similar argument here and said that that is a tortured interpretation that runs counter to the plain language of statute and the congressional intent behind the 1980 amendments. Because plaintiffs allege injury from the radioactive properties of source byproduct or special nuclear materials. That is a nuclear incident. By definition, this case asserts public liability and allows defendants to remove it. Now, I want to step back and address plaintiff's only argument against the clear reach of that jurisdictional provision. It urges the court to take a half sentence out of the 1957 Senate report about the location of licensed activity and import it into the definition of the nuclear incident in the jurisdictional provision. Of course, this court need not resort to legislative history at all since Chevron says the statutory analysis ends when, as here, Congress expresses itself unambiguously. But even if needed, the nature and structure of the Act and the legislative history, including the 1957 Senate report, confirm the broad application. As a high-level reminder, the Act has two purposes. One, protect the public. Two, encourage private participation in the nuclear energy industry. Congress had found that private participants did not want to engage in the nuclear industry because of a concern over liability. So, Congress sought to assure those participating in the industry that they would be indemnified in the event of a nuclear incident. And in the case of an extraordinary nuclear occurrence, to have their liability capped. That is why Section 2014T defines a person indemnified as not only the person with whom an indemnity agreement is executed or who is required to have financial protection. That's plaintiff's and the district court's argument. But it goes on and it says it extends to and any other person who may be liable for public liability. That's the broad purpose and structure of the Act. Even in 1957, it applied to nuclear energy participants like Cotter. And let me step back and go back to that half sentence taken out of context from the 1957 Senate report. That report itself confirms the omnibus nature of the Act that has an indemnification structure that does this. And this is according to the report. It is not limited solely to those who may be found liable due to their contractual relationship with the licensee. And I want to stop there because this is critical. The report points out that Congress had considered the exact limit that plaintiffs urge here. That is to limit application of the Act to those in privity with the licensee. Congress rejected that limit and it enacted Section 2014T as I quoted just a moment ago. And the Senate report itself characterized that section as extending to quote, any person who might be found liable regardless of the contractual relationship. Counsel, let me take you away from legislative history which we could all read. A little procedural history I don't know. After the first remand order and before the third party complaint, did your client argue to the state court a federal preemption based on this analysis? Preliminarily, your honor, yes. Cotter filed a motion to dismiss but withdrew it in order to resubmit that same question on a more fulsome record through summary judgment. So there was no ruling by the state court one way or the other. That is correct. But your position was that the state court had to follow where, right? Yes, that is correct, your honor. I will move on from the legislative history, your honor, and I want to talk about an alternative way Cotter should win even if somehow the district court were correct and the substantive provisions for a license or indemnity agreement act as a jurisdictional prerequisite. They do not. But even if they did, somehow, that prerequisite would still be satisfied here in one of two ways. First, Cotter had at the time, Cotter had a source material license that the AEC, the government, issued to Cotter for all of the material that had at Laddy Avenue for which it could be held liable. And even if that license somehow did not apply, Mallinckrodt also has an indemnity agreement that is applicable here. And there's a couple different ways that could work for Cotter. One, the claims against Mallinckrodt should not have been severed in the first place. Again, the act is designed to get all claims arising from a nuclear incident into the same federal form. So it makes no sense to say, this party has an indemnification agreement, this is a nuclear incident, Mallinckrodt's case gets to stay in federal court, but all the other claims arise still from the same nuclear incident get sent back to state court. The indemnification provision alone should make sure all claims arising from the nuclear incident stay in federal court as Congress intended. But let's set that aside for a moment because Cotter can also avail itself of indemnification through Mallinckrodt's contract. That is because the contract explicitly incorporates Section 2014T, which I've now quoted multiple times, as extending to any person who may be liable for public liability. And in a different Third Circuit case, the court addressed that scenario and said that any entity who is exposed to potential liability for activity that results in a nuclear incident, even if it's not a direct participant in the activity, is ultimately entitled to indemnification. And of course this makes good policy sense because it serves both purposes of the act. It protects not only parties like Cotter and Mallinckrodt who were engaged in the industry, but also the public. And as the district court acknowledged, all claims in this case arise from Mallinckrodt's Manhattan Project nuclear materials. So the contractual activity gives rise to all claims in this case. The bottom line of this whole case on the merits is that the district court should not have required a license or indemnity to apply the act's jurisdictional provisions. But even if that were a requirement, either then, Cotter's source material license or Mallinckrodt's indemnity should have satisfied that test. And I see I have a couple minutes left, so I want to briefly address plaintiff's arguments as to this court's appellate jurisdiction. Before you do it, let me ask you this. WARE says that the PAA incorporates state tort law to a large extent. So what's the big deal here? Why are we fighting for years over whether the claims are PAA or state law or common law? Just give me a thumbnail. Is it the statute of limitations like in WARE? Your Honor, the statute of limitations could be incorporated from state law if it was not inconsistent with federal law. I'll give you the shorthand and then I'll give you the reason why. The shorthand, I'll give you two examples. I didn't mean that to be a statute of limitations question. Just generally, why are we here? Why are we going through two remands and a third-party claim? Why don't you all get to the merits? Your Honor, there are a number of reasons. Right now, Cotter can be subject to punitive damages and medical monitoring claims in state court that the Price-Anderson Act prohibits. It can have claims filed against it as state law claims that were dismissed in McClurg and affirmed by this court in Holbrook. And it can be potentially subject to liability to plaintiffs who do not meet the federal standard of exposure. And even beyond the substantive provisions of the Act, the Supreme Court has said that Congress in the Act expressed an unmistakable preference for a federal forum. And in part, that is because it wanted to consolidate all claims for efficient disposition. But also, it's being remanded to state courts, strips Cotter and the other parties of important procedural rights, such as Rule 23. Because in this case, it's a punitive class action. And Rule 23 would be protective of Cotter given the problems of commonality, typicality, and adequacy below. This is the only opportunity for Cotter to seek review of the Act's application in a federal forum. And the state court has indicated it will look to the federal court to determine whether or not the Act applies. So that the decision of the remand order below will have final determination of this issue and have lasting effects for many of these cases. Well, not subject to Supreme Court review by certiorari. Yes. Unless the court has further questions, I'll reserve the remainder of the time for rebuttal. Thank you. Very good. Ms. Brustovich, are you first? Yes, sir. Celeste Brustovich, Your Honor. I'm the managing partner at Cooper Law Firm down here in New Orleans. I have Mr. Cobb with me. In reading the massive amount of briefs that we've prepared for this panel, a few things occurred to me. First of all, it was a year ago today that Mallinckrodt filed for bankruptcy. And so during this past year, this case has not been stayed and it's proceeded steadily in the state court. And since up for consideration is whether this court is going to take this case from a state court where it has been proceeding, I thought it appropriate to tell you what's happened over the past year. Importantly, the district court judge, Judge Walsh, has appointed a special discovery master. So that process has been going on. We have been proceeding with written discovery and soon we'll have depositions with Cotter. Our primary focus of discovery at this particular point involves Cotter's parent corporation. I raise this to you because it's easy to think of this case from the very beginning. We've spent half our time trying to get to the merits and the other half of our time dealing with these jurisdictional subject matter jurisdiction, all these complex and, frankly, interesting federal questions that this case presents to the panel. But I want to make this clear to you that when we are talking about parents or Cotter's parent corporation, ComEd, Commonwealth Edison, they have a defense in state court that they don't have in federal court. So a good portion of our resources, those of ComEd, have been pertaining to discovery, pertaining to personal jurisdiction over that company in state court. So what I'm saying is we are spending money, time, effort, court time, a special master. Everyone's engaged in it, not just our side, the defense's as well, to deal with a question that if the case goes back to federal court after three years, all of that effort will have been wasted. How is that relevant? How is that relevant to the merits of this appeal? Well, I think under the gift standard, if you're going to consider if you have an appeal under 1367 C2 or C4, you have to look at what progress has been made in state court. And you have to look at the federal court's relationship to the state's courts. And what I'm saying is for this past year, we have, the defense has, and the state courts have spent a considerable amount of effort on something that would not be an issue in federal court should that happen. Counsel, after the first freeman order, did COTR request a 82-bead certification for appeal? They did not. And that would be the only avenue that they would have a proper appeal in this case, a 1292 certification. They didn't request it. Judge Ross didn't give it to them. So, essentially, what we have here is... They did request it and... They did not. They did not request it, Your Honor. The other thing that I wanted to focus on after I read all these briefs is kind of what this case is all about. So, yes, we all get into the history of Mallinckrodt and the Manhattan Project and all that. But what this case is really about when it comes to COTR is... COTR purchased some materials that Mallinckrodt had responsibility for. Mallinckrodt's responsibility for these materials ended in 1966. Mallinckrodt never had any ownership or interest or anything to do with the Laddy Avenue site. A company prior to COTR purchased the materials from the federal government, and the federal government said, this is your responsibility now. We're not involved in this. Those are in the appendix. And then COTR bought it from another corporation, and they bought it for legitimate commercial purposes. And by then, this material was at Laddy Avenue. Now, if you could, I hope you could see me. If Laddy Avenue is here, the railroad spur is right here, and Coldwater Creek is right here. And so about three years, four years after COTR bought the materials, after Mallinckrodt was removed from the situation, after the government had abandoned its interest in the property, COTR decided to drive the material, load it on some railroad cars, and take it off to Colorado. But when they did that, we've alleged that they did that in a negligent manner, a grossly negligent manner. And in the end, what happened was they contaminated the banks of Coldwater Creek, and they contaminated Coldwater Creek itself. And then as that river has flooded over the ensuing decades, that has moved the radioactive material to our client's properties. And that's the contempt. They have a real property interest. They own that property. They saved for it. They got mortgages on it, and they want their property remediated. Now, is it a lark to say that Coldwater Creek is contaminated? No. I bet that if we ever get to the merits with COTR, they'll admit it. We know that two or three years after COTR did this work at Laddy Avenue, and this is in our petition, is that they told the NRC that Laddy Avenue was completely cleaned up. There was nothing to worry about there. But the NRC came in and said, no, COTR, you lied to us. It still has thorium and uranium there. Now, that's important, thorium. Thorium, they never had a license for thorium. They did have a source license for uranium, but not thorium. There are two radioactive materials that are out there that are contaminating our client's property. Counsel, so these are definitely byproduct material that are there? Yeah, that's what the federal government sold. They sold the byproduct material from the Manhattan Project. Two companies, successor companies, bought it before COTR did for commercial purposes. But nothing that Malincroft did caused or even contributed to the polluting and the contaminating of my client's property or Coldwater Creek. That was all done by COTR, all of it. And that's what we're precisely suing for. Now, on the issue of jurisdiction, I'd like to say that Congress made a decision that said, when a district court demands a case and says it doesn't have federal question jurisdiction, that's not subject to an appeal unless it's something special. Those special things are civil rights case over which we fought a civil war or the defendant has a federal defense, which actually in this case we learned came from prohibition. But even in the case of a federal defendant having a federal defense, it just means that the state law still applies, but they get a federal defense in a federal form. Here we have this complication because of the third party naming of Malincroft much later. I know we have this in the brief, but I want to reinforce it here. Counsel, correct me if I'm wrong. It strikes me that the jurisdiction is a non-issue if we agree with Ware. I don't believe so, Judge. We don't have a final judgment here. I mean, if we agree with Ware's interpretation of the scope of the PAA. Yes, you're correct, Your Honor. That would be correct. But what I want to suggest to you is that if Cotter really thought it had a right to remove this case again because we amended the petition, we amended that petition in October 2019. They didn't do anything. We sent them discovery in December 2019 and some more discovery in January 2020. They didn't do anything. They didn't do anything until it became public that Malincroft was going to file for bankruptcy. And then they made Malincroft a third party defendant, and that led to, of course, the removal by Malincroft. But the point about Malincroft is Malincroft as a third party defendant cannot convert the plaintiff's case into a federal case. All it could do as a government employee is raise a federal defense. So with that, I'm going to give the balance of my time to Mr. Cobb. Thank you, gentlemen. Thank you. Victor Cobb for the attorneys, the plaintiffs. Your Honors, this court determines that it is permitted to review the district court's first remand order despite the prohibition in 1447. It's important to understand how the PLA has changed throughout time. Specifically, it's important to understand how the 88 amendments changed, what they changed and what they did not. Counsel, let me interrupt you. Let me interrupt you. Go ahead. Did you, in your briefing, deal with the 2009 U.S. Supreme Court case in Carlsbad Technology? I'm not aware specifically of Carlsbad, but I'd be happy to answer any questions you have about it. If you're not aware, I don't think I'll follow up on it because it says what it says. So proceed with your argument. But mainly, courts fail to apply congressional intent as to what constitutes a nuclear incident. In doing so, they conflate the original jurisdiction under the Price-Anderson Act to the entire Atomic Energy Act. The PLA is contained in Section 2210. Counsel, what courts are you talking about? We're hearing we've got district courts all on your side and we've got some circuit courts on the other side. The courts are reading it wrong. I'm referring to the 5th Circuit and the 3rd Circuit who failed to look at what the word occurrence means as explained in the legislative history. Perrin's argument here is not that the PLA does not provide original jurisdiction when it applies. Our argument is that the PLA does not apply in the first place. As Kyle would agree, in order for there to be original jurisdiction, there has to be a nuclear incident. This requires three things. The first one is an occurrence... Counsel, you understand we are bound by a Chevron and our own authorities. If the statute's clear, we don't get anything about the legislative history. In this case, the word occurrence, which is defined as anything that happens, I would certainly argue that that is ambiguous and unclear. You have to keep in mind that this was drafted as an insurance and a liability scheme. The word occurrence is used in insurance all the time and it has been determined that it can be vague. It is vague. When that is the case, courts should look at legislative history, particularly in a case like here where applying the original or the ordinary meaning would go against the purpose of the Price-Anderson Act, which was to offer government indemnification and a cap on liability for those that maintain financial protection. This was not a free gift to the industry. It was in exchange for financial protection. Here, as it says in Chevron, where it is ambiguous or it is unclear, you should refer it to the legislative history. That's what plaintiffs are asking this court to do here. Mr. Cobb, did you read the Sixth Circuit decision that just came in to us over the wire on Friday? I think it was. I did. Do you think that case was decided correctly? Well, no, because it applies the ordinary meaning to the word occurrence. Do you think that would be like the third and the fifth? Do you think all three of them are wrong? Correct. I see. Correct. As you can see, they make a big mistake. They said that it should be given the ordinary meaning at the time the definition was implemented. They cite Merriam-Webster 1989. First of all, the definition of nuclear incident and the word occurrence was drafted in 1957. The 1988 amendments did not change the definition of nuclear incident in any way. Nor did they change the definition of licensed activity. And this is what licensed activity is defined as in the Price-Anderson Act. Any activity licensed pursuant to this chapter, that being the Atomic Energy Act, and covered by the provisions of Section 2210A. 2210A is the section that requires financial protection. So, in order for there to be licensed activity under the PAA, an NRC licensee must maintain financial protection under 2210A. Silverwood, yes, while the 1988 amendments responded to its holding and said that human damages are not allowed, they did not change the court's determination that the PAA did not apply in the first place. And did not change the Supreme Court's opinion that the Atomic Energy Act has no original jurisdiction of its own. The NRC agrees with this interpretation. In their report in 1998, 10 years after the 1988 amendments, this is a quote. Key parameters of the Price-Anderson Act include which licensees are covered. They clearly don't think that all licensees are covered. And this, as you said, under Chevron, their interpretation should be given deference. The legislative history. 57, it says that, it does not say that the NRC will include the provisions of all licensees. It says that the NRC did not require financial of all licensees or extended identity to them because private insurance was available. In 1988, they had a list of covered licensees. Why have a list if everyone's covered? Covered's interpretation was not Congress's intent. Congress's intent was to respond to TMI and allowing all nuclear incidents a federal forum. A nuclear incident, basically an extraordinary nuclear occurrence is a subset of a nuclear incident that is considered substantial by the NRC. TMI was not allowed a federal forum because it was not considered substantial enough. Here, the court expanded the scope by allowing lesser occurrences within it, but did not open up the door for all licensees. That was not Congressional intent. If Congress had intended to provide PA coverage for all NRC licensees, regardless of whether they provide financial protection or they conduct government activity, surely they would have extensively addressed how such a drastic overhaul of the identification scheme would be accomplished. Instead, no new provisions were added to accomplish this goal. The legislative history alone provides three total paragraphs on the issue. These three paragraphs demonstrate Congress's intent to extend the original jurisdiction to less severe nuclear incidents, not to all licensees. Congress's public policy argument is misplaced. It is Congress's interpretation that the whole purpose was to encourage private development in atomic energy, but this was by an exchange for maintaining financial protection, something that Cotter says is not necessary. Cotter's interpretation completely ignores the definition of license activity and the entire foundation on which the PA identification scheme runs on. Nothing about our argument prevents a federal forum when the factual prerequisites of the act have been met. NRC licensees who maintain financial protection are allowed their federal forum. Now I'm going to talk about this person-indignified argument Cotter makes. This is fundamentally flawed. When faced with the clear interpretation of the NRC that the PA does not apply to everyone and only covered licensees, Cotter turns to this definition to insist it is still covered. However, this reasoning is fundamentally flawed because it assumes that the PAA applies in the first place. That's not the case here because Cotter never conducted license activity and never conducted work related to the government. There's been no occurrence with respect to their liability. So this person-indignified language which Cotter relies on is not even applicable here. It has not been triggered. And Cotter's argument with respect to Malincus, an indignification agreement providing indemnity to them, is also flawed. If Cotter would have read the whole quote, and I've included the whole quote, it says that it is limited to public liability which arises out of or in connection with contractual activity. Cotter conducted none. None of Cotter's activities were related to the government. The occurrence that plaintiff's claims are based on is Cotter drying of radioactive waste on the banks of Coldwater Creek. These operations were nowhere related to Malincus's contract. It took control of federal nuclear byproducts. It's regulated under the Atomic Energy Act. You can call that licensed activity or contractual activity. Licensed activity, as I've just explained, if you look at Section 2014P, this is the definition of licensed activity. It requires financial protection to be considered licensed activity under the PAA. And it was not contractual activity because their operations had nothing to do with the government. The occurrence that we complain of is separated from Malincus by location. The government still had a responsibility to take care of the byproducts from its former activity. The government sold this waste to a private entity, and in doing so, they washed their hands of the liability. If you look at the appendix, they were still sacking it. That's a statement of a conclusion. That's what we're hearing up to the result. My argument is that regulation under the Atomic Energy Act does not equate to indemnification under the PAA. You made another conclusion. No. Plaintiffs just asked this court to try and determine congressional intent. You have the option of giving it its ordinary meaning, or you have the option of applying the meaning that Congress explicitly gave when it enacted the definition. I would say that the latter is a better representation of Congress's intent. Florida makes Trump the language used. We need to look at the ADA amendments and how they expanded the scope and how courts have misinterpreted the expansion of that scope. They include less severe accidents for covered entities. They did not open the PAA original jurisdiction to all licensees. This court finds that it considered PAA issues under no review to take the opportunity to set the record straight and give the PAA the meaning Congress intended. Thank you all. Thank you. For our final, Ms. Heavey. Thank you, Your Honor. As a threshold matter as this court notes, Carlsbad is dispositive here because it held that a remand order declining to exercise supplemental jurisdiction over state law claims is not a remand for lack of subject matter jurisdiction and would not preclude a court of appeals from reviewing. As to the Price-Anderson Act arguments, it is important to note that plaintiffs concede that the Act provides for removal so long as it applies. And when plaintiffs argue about the definition of occurrence, first, Ware did look exactly at that definition and concluded that it need not resort to legislative history because it was clear and it determined the statute was broad, although it also did go on to consider legislative history. And I want to be clear earlier. When I was asked the question about the circuits that have addressed this question, I was discussing the circuits that had precisely grappled with the question of whether a license or identity agreement is required as an explicit conversation in the text. However, on page 30 of our brief, we do cite to the 2nd, 6th, 7th, 9th, 10th, and 11th circuits that have applied the Act without requiring a license or identity. Now, of course, courts must assure themselves of jurisdiction before applying the Act, just like this court did in Holbrook. So those cases mean something. And it also is interesting that plaintiffs seem to agree that the word occurrence is not ambiguous in that it does mean something that happened. But what they argue is that we should not look at the plain, ordinary dictionary meaning of occurrence, but look beyond that at legislative history. And of course, the legislative history, even if needed, shows that the 1988 amendment did extend beyond extraordinary nuclear occurrences to all nuclear incidents. And this court in Holbrook noted that Congress spoke clearly when stating such action shall be arising under federal law. And it made a distinction between an extraordinary nuclear occurrence, which is the only place you see a reference to some type of off-site or location of license activity. A distinction between those and all nuclear incidents, which is much broader. Now, whether licensees are covered is irrelevant to whether non-licensees get jurisdiction. And if this court concludes, as it should, that neither license nor indemnity agreements are necessary to invoke the Act's jurisdiction, then plaintiffs' arguments as to mill tailings are irrelevant. But before I get into that, I do want to briefly conclude the Price-Anderson Act section of plaintiffs' argument with noting that the NRC said what it said about the indemnification provisions and the substantive portions of the Act. But it is also said that Congress guarantees a federal forum and that the 1988 amendments expressed Congress' preference for a bright-line rule in this area. And plaintiffs' arguments would undo that bright-line rule. But turning to the arguments regarding if that task were required, if you need a license or indemnity, even then, the government was involved. The government owned the materials, licensed the materials to COTR, they were highly regulated, did site inspections, and, critically, all of the materials were licensed as source material. Just a couple last points, Your Honor. Your Honor, Mallinckrodt's bankruptcy is irrelevant. In fact, we just got word this morning that the state is going to be lifted as to Mallinckrodt in the Banks case, so the case may proceed in federal court if it is remanded with all of the claims consolidated and proceed together as Congress intended. Gives does not apply if, in fact, the district court had original jurisdiction. In that case, then, the district court erred as a matter of law. We respectfully request this court reverse and remand with clear instruction to the district court to assume original jurisdiction over all claims in this case. Thank you. Thank you, counsel. Case has been thoroughly briefed. Argument has been effective and helpful. We appreciate that. For plaintiff's counsel, we hope Ida is getting cleaned up as quickly as possible, and now the Californians have Huntington Beach to deal with, so everybody has Mother Nature problems these days or human error problems. In any event, thank you, counsel, for participating remotely. We're hoping to put that behind us, but it's been effective in getting cases, including complex cases like this, ready for disposition, and we will take the cases under advisement. Thank you.